Robert PILKINGTON

v.

PERSONNEL APPEAL BOARD of the
STATE OF RHODE ISLAND et al.

Nos. 89–117–Appeal, 89–138–M.P.

Supreme Court of Rhode Island.

Nov. 13, 1990.

John M. Roney, Roney & Labinger, Providence, for plaintiff.

John LP Breguet, Dept. of MHRH, for defendants.

## OPINION

MURRAY, Justice.

This case comes before us on a petition for certiorari, originally filed as an appeal. It entails interpretation of the Merit System Law. General Laws 1956 (1984 Reenactment) chapter 4 of title 36. The defendant, the Department of Mental Health, Retardation and Hospitals (MHRH), seeks to have an order of the Superior Court—reinstating Robert Pilkington (Pilkington) as a permanent employee—vacated and the decision of the Personnel Appeal Board (board) reinstated. We vacate the decision of the Superior Court.

In 1977 MHRH hired Pilkington as a temporary employee in the position of program manager. By operation of law, his status automatically converted to provisional one year later when no examination for the position had been given. Section 36–4–31. Pilkington continued as a provisional employee until 1983, when the examination for program manager was given. He took the exam and ranked tenth on the list of those who had passed.

On March 13, 1984, the division of personnel certified the names of Pilkington and five others for the position of program manager. Each candidate was notified by a personnel clerk that his or her 130–day probationary period would begin on March 13, 1984. Upon learning this, however, a supervisor in the personnel department informed the candidates that this date was incorrect and that their effective date of appointment would be July 8, 1984. The requisite paperwork was completed for the July 8, 1984 date. Without appealing this delay, Pilkington began serving his probation on July 8. Periodically he received unfavorable probation reports. On January 18, 1985, he was terminated for failure to complete his probationary period successfully.

Pilkington appealed his termination to the board on the grounds that, as an eligible incumbent, he automatically became a probationary employee fifteen days after his name was certified to the appointing authority, MHRH. Consequently he had completed his probationary period and had become a permanent employee long before MHRH attempted to terminate him. In support of his argument, he cited § 36–4–31, which states:

"When an appropriate list is established for any such position held by a temporary or provisional appointee, the position shall be deemed to be vacant for the purposes of certification and appointment, and no salary or other compensation shall be paid to any temporary or provisional appointee for services in said position for more than fifteen (15) days after certification of at least three (3) available eligibles from such appropriate list."

Because MHRH had failed to take any action within fifteen days, Pilkington contended that his status had converted to probationary by operation of law. The board rejected his argument, however, because § 36–4–31 contained no specific provision *requiring* MHRH to appoint someone within fifteen days. Therefore, conversion to probationary status did not occur by operation of law. Although the continued payment had violated § 36–4–31, the board determined that its effect was to make Pilkington a "de facto" employee from March 13, 1984, until July 8, 1984. *See Shapiro v. State Civil Service Comm'n*, 12 Pa.Commw. 121, 123–24, 315 A.2d 324, 325–26 (1974) (retention of provisional employee beyond permitted time created de facto status and entitled employee to be paid but did not create permanent status).

Pilkington appealed the board's decision to the Superior Court, which found that the board's interpretation of § 36–4–31 rendered the fifteen-day rule meaningless and enabled MHRH to delay arbitrarily the probationary period. The court determined, therefore, that Pilkington's probationary period had automatically begun on April 4, 1984, fifteen days after he was certified, and ordered his reinstatement as a perma-

nent employee. MHRH appealed this decision and, pursuant to G.L.1956 (1988 Reenactment) § 42–35–16, filed a petition for a writ of certiorari. The two matters were consolidated.

In order to determine whether Pilkington was validly terminated, we must determine on which date his probationary period began, April 4, 1984, or July 8, 1984. This is ultimately a question of statutory interpretation.

Section 36–4–31, as it read prior to its 1985 amendment, offers little guidance. The fifteen-day rule is clearly spelled out in the section quoted above. What is unclear is the legal effect of noncompliance with this section. Although the board based its decision on the absence of a statutory provision, we find that the 1985 amendment is dispositive of the issue. The amendment provides, inter alia:

"An employee who holds temporary provisional status for at least twelve consecutive months in the class in which he is serving and is found to be reachable for certification to the position he holds *shall be appointed* to the position unless the appointing authority certifies to the personnel administrator that said individual's service has been unsatisfactory." (Emphasis added.) Section 36–4–31, as amended by P.L.1985, ch. 181, art. 49, § 1.

This provision, which was not in effect at the time of Pilkington's appointment, is precisely what the board found lacking in the 1984 version of the statute. Read together with the fifteen-day rule, this provision specifically requires the appointing authority to act within fifteen days of certification; if it fails to do so, then the eligible provisional employee will automatically become a probationary employee. If the appointing authority has another candidate for the position, or if it does not want to appoint the incumbent, then it must make another appointment within fifteen days.

Were we now applying § 36–4–31 as amended, our job would be simple. Pilkington was an eligible incumbent, MHRH failed to make an appointment within fif-

teen days, and therefore, Pilkington's probationary period automatically began on April 4, 1984. We are dealing with the version of the statute prior to amendment, however, and we must therefore determine what the Legislature intended when it enacted the fifteen-day rule.

In *Bell v. Ford*, 115 R.I. 480, 348 A.2d 24 (1975), we were presented with circumstances that are fortuitously similar to the case at bar. The petitioner in *Bell* had been effectively appointed to probationary status in November 1968 but was inexplicably held over after his probation expired in May 1969 and was not terminated until June 1969. *Id.* at 481, 348 A.2d at 24–25. He argued that his retention and continued payment made him a permanent employee by operation of law. Section 36–4–28, as it was in effect at that time, stated:

"[A]t the expiration of the probationary period no salary or other compensation shall be paid to any such person, unless the appointing authority has filed with the personnel administrator a statement in writing that the services of the appointee during the probationary period have been satisfactory and that it is desired that he be continued in the service." General Laws 1956 (1969 Reenactment) § 36–4–28.

This meant that a probationary employee would be automatically terminated at the expiration of his or her probationary period, unless the appointing authority notified the personnel administrator otherwise. As we stated then, even the retention and payment of an employee beyond the period of probation would not alter this interpretation. *Bell*, 115 R.I. at 483, 348 A.2d at 25.

Section 36–4–28 was amended in 1970 to provide that a probationary employee would automatically become *permanent* unless the appointing authority notified the personnel administrator that his or her performance had been unsatisfactory. Section 36–4–28, as amended by P.L.1970, ch. 211, § 1. We do not cite this section for the proposition that Pilkington automatically became a permanent employee at the expiration of his probationary period. Rather we note that this amendment effectively

reversed the procedure challenged in *Bell*, thereby settling the issue. Admittedly, § 36–4–28 prior to its amendment was more explicit than was § 36–4–31. We believe, however, that the two statutes and their amendments are sufficiently analogous. We conclude, therefore, that the 1985 amendment to § 36–4–31 was similarly intended to reverse the procedure previously implied by the statute. Consequently the statute that was in effect at the time of Pilkington's appointment did not provide for automatic conversion to probationary status, as it does now. We find, therefore, that Pilkington's probation began on July 8, 1984, and Pilkington was effectively terminated on January 18, 1985.

The defendant's petition for certiorari is granted, the decision of the Superior Court is vacated, and the papers of the case are remanded to the Superior Court for further proceedings in accordance with our instructions.